**THERMO KING CORPORATION and Dawes Manufacturing Company, Plaintiffs,**

v.

**WHITE'S TRUCKING SERVICE, INC., and Transicold Corporation, Defendants.**

**Civ. No. 8701–M.**

United States District Court
S. D. Florida,
Miami Division.
May 22, 1959.

Leonard, Street & Deinard, Minneapolis, Minn., Benedict Deinard, Harold D. Field, Jr., Minneapolis, Minn., Myers, Heiman & Kaplan, Miami, Fla., Eugene C. Heiman, Miami, Fla., of counsel, for plaintiffs.

Mead, Browne, Schuyler & Beveridge, Washington, D. C., Francis C. Browne, Washington, D. C., Schwarz & Zinn, Miami, Fla., Bart L. Cohen, Miami, Fla., of counsel, for defendants.

VAUGHT, District Judge.

This is an action for patent infringement. The plaintiff Thermo King Corporation (hereinafter referred to as "Thermo King"), alleges that it is the owner of certain patents, numbered 1, 2 and 3 for purposes of identification, which are being infringed by the defendants, White's Trucking Service, Inc. (hereinafter referred to as "White's"), and Transicold Corporation (hereinafter referred to as "Transicold"). It seeks to have said patents declared valid, that the defendants have infringed same and to have judgment rendered permanently enjoining the defendants from further infringement, for damages, costs and attorney's fees.

The patents in suit and the claims relied upon by plaintiff are:

1. Jones Patent 2,477,377, issued July 26, 1949, "Means for Thermostatically Operating Gas Engines," Claims 1 to 4, inclusive;

2. Jones Patent 2,666,298, issued January 19, 1954, "Method and Means of Defrosting a Cold Diffuser", Claim 6; and

3. Jones Patent 2,509,099, issued May 23, 1950, "System for Controlling the Operation of Refrigeration Units", Claims 1 to 5, inclusive, and 13.

Dawes Manufacturing Company appeared generally as an interpleaded plaintiff, purporting to have acquired by assignment all rights and interest held by interpleaded plaintiff, Frez-O-Mat Corporation in Jones Patent 2,509,-099. Frez-O-Mat, before dissolution in July, 1952, was the owner of an interest in whatever rights Thermo King obtained in said patent.

This action has been dismissed as to the other claims of said patents and as to the interpleaded plaintiffs.

The defendants admit the issuance of the patents in suit, but deny their validity and infringement thereof and have counterclaimed for declaratory judgment of non-infringement and invalidity, together with additional relief by way of damages, costs and attorney's fees. They allege the patents in suit are copied from well-known prior art as exhibited in the following patents which were introduced in evidence:

Nelson Patent 2,286,758, issued June 16, 1942

Melcher Patent 2,213,654, issued Sept. 3, 1940

Smith Patent 2,318,893, issued May 11, 1943

Penn Patents 1,791,839 and 1,827,-102, issued in 1931

Thomas Patent 2,400,665, issued May 21, 1946

Lund Patent 2,451,682, issued Oct. 19, 1948

Shively Patent 2,115,431, issued April 26, 1938

Raney Patent 2,337,926, issued Dec. 28, 1943

Doble Patent 1,913,433, issued June 13, 1933

Warneke Patent 2,178,445, issued Oct. 31, 1939

Haymond Patent 1,912,841, issued June 6, 1933

Kitzmiller Patents 2,001,027 and 2,001,028, issued 1935

Cocanour Patent 2,452,102, issued Oct. 26, 1948

Hanson Patent 2,286,961, issued June 16, 1942

Ruppricht Patent 2,049,625, issued Aug. 4, 1936

Kramer Patent 2,440,146, issued April 20, 1948

Goggins Patent 2,187,397, issued Jan. 16, 1940

Goddard Patent 2,476,184, issued July 12, 1949

Plaintiff Thermo King is a Minnesota corporation, with its principal place of business at Minneapolis, and is the owner of the three United States Letters Patent in suit, all of which were granted to plaintiff as assignee of the inventor, Frederick M. Jones.

Defendant White's is a Florida corporation, having a regular and established place of business in the City of Miami, County of Dade, State of Florida.

Intervening defendant Transicold is a California corporation and is the alleged manufacturer of the alleged infringing equipment.

The patents in suit have to do with transportation refrigeration. The transportation of perishable and frozen food products by truck has become an important element in our national economy and is made practical by the use of refrigeration. Naturally, those engaged in this character of business are keenly interested in the development in this field and particularly in the most effective means of preserving food products by maintaining proper temperature in transit, under all climatic conditions. The rapid growth of this character of transportation in the past two decades has challenged the inventive genius of those interested and many of the patents issued during this period have to do with the combination of certain non-patentable elements, or in other words, the assembling of available components, which have been utilized in securing the desired results.

The patents in suit relate to a closed-circuit transport-refrigeration system. The system consists, essentially, of a compressor (pump), which during the normal refrigerating cycle, compresses and heats the refrigerant gas and then passes the hot gas under high pressure to a condenser where the gas is cooled to a liquid. Then it passes to a storage tank, whence it passes to an expansion valve which controls the flow in response to a temperature condition of the evaporator. From the valve, the liquid passes into the evaporator where it extracts heat out of the cargo space and boils, changing from a liquid to a gas. It is finally sucked into the compressor as a gas to start its cycle over again.

There were two basic problems that required solution before such a system could be successfully operated in a transport vehicle carrying perishable or frozen food: (1) automatic regulation of engine speed of the refrigerating unit and (2) automatic control of defrosting.

The description contained in these various patents, with respect to the patentable idea, is highly technical and at times almost imaginary. It is admitted that there are certain basic elements involved in plaintiff's patents which are within themselves not patentable.

As to the claims in suit the plaintiff contends as follows:

Claims 1 to 4, inclusive, in Patent No. 1, comprise a combination, in substance, of four elements cooperating together to achieve a new result:

1. A fluid thermostat with its temperature-sensitive bulb in the cargo chamber, producing a distinct hydraulic force within the closed system of the thermostat itself;

2. An expansible chamber (bellows) which is expanded or contracted by the hydraulic force, depending on the temperature of the cargo chamber;

3. A connection between the expansible chamber and the engine governor and throttle; and

4. A mechanism to move the throttle with a snap-action between high and low positions in response to a magnetic force, so that the engine will run either at maximum speed or at minimum speed and not waiver between.

Claim 6 in Patent No. 2 comprises a combination of the following elements cooperating together to achieve a new result:

1. A condenser with an inlet and outlet;

2. An evaporator coil with an inlet and outlet at its opposite ends;

3. The refrigerant line connecting the condenser and evaporator;

4. The Jones' superheated gas by-pass line from the condenser inlet to a point in the evaporator "between its opposite ends";

5. The hot-gas valve for defrosting;

6. A compressor continuously operating during defrosting; and

7. A "condition responsive control device" connected to the hot-gas valve which initiates defrosting when the need for it exists.

As to Claims 1 to 5, inclusive, and 13, in Patent No. 3, the gist of the patent is the electrical control circuit for automatically initiating and terminating defrosting, and the claims under this patent comprise a combination, generally, of the following elements cooperating together to achieve a new result:

1. Compressor functioning as a source of hot gas;

2. A switch which energizes a solenoid to open

3. The hot-gas valve, and turns off

4. The circulation fan in the cargo chamber, and

5. A thermostat which senses the rising temperature of the evaporator and terminates the defrost when the frost is melted.

It is contended that the combination which is the gist of the plaintiff's patents produced a novel and useful result by the conjoint action of the hydraulic and the magnetic forces, as the Patent Office determined.

It is admitted that these particular elements within themselves are not patentable but it is the particular combination of these elements in the plaintiff's patents which produces the desired temperature and defrosting operation. The plaintiff contends vigorously that the method it employed in achieving this particular result is the only manner in which that result could be achieved.

The defendants contend with equal vigor that the claims contained in the Jones patents are merely copies of claims in the prior art above-named, and that there are different methods by which the defrosting result could be achieved. They allege, and offered evidence in support of their contention, that while their unit uses the same elements and achieves the same result both in maintaining uniform temperature and defrosting as the plaintiff's patents, the elements are utilized in a different manner wholly independent of plaintiff's method.

The plaintiff produced at the trial two one-piece refrigeration units of its own manufacture, which are normally installed in the "nose" of a trailer; three exhibits purported to be a Transicold refrigeration unit of the "underslung" type procured from an unidentified party in Kansas; and four elements characterized by plaintiff as an automatic defrost conversion kit consisting of commercially available components, including a pressure switch, a thermostat, a relay and connecting wires. The source from which plaintiff obtained the components was not adequately identified.

The three-piece refrigeration equipment procured by the plaintiff from the unidentified party in Kansas does not include any means for automatic defrost, an electrically heated drip pan, a refrigeration medium, nor a conductor for transferring a refrigerant medium from one to the other of the two pieces of equipment.

The defendants deny that the evidence shows that Transicold manufactured, sold or used any of the refrigerating equipment produced at the trial, or illustrated in photographs produced at the trial, and allege that the trailer owned by White's was purchased by them from Great Dane Trailer Manufacturing Company of Miami, formerly known as Florida Trailer & Equipment Company, with refrigeration equipment installed therein by Trusler's Truck Refrigeration Service of Miami, Florida.

The defendants contend that the so-called Transicold units do not infringe Claim 6 of Patent No. 2 for two principal reasons. First, the hot gas for defrosting is not introduced into the evaporator coil "at a situs of the latter between its opposite ends" as called for by the Jones claim. It is introduced into the "distributor lines" between the expansion valve and the evaporator coil, more nearly like the Lund patent. These lines constitute part of the "conduit connecting the outlet of the condenser and the inlet of the evaporator" within the meaning of Claim 6. Therefore, it cannot be said that the hot gas by-pass conduit is connected to the "evaporator" since that is a separate element in Claim 6. Second, the "condition responsive control device" of the Transicold unit is not for opening the hot gas valve "when the value of the condition varies beyond a predetermined range" as called for by the Jones claim. The pressure switch or "condition responsive device" of the Transicold unit is not a "thermal motor" and does not measure a differential of temperatures or pressures. Accordingly, it does not depend upon a condition exceeding a "range" of values. It acts to make a contact at the instant the predetermined point is reached. That is, when the air pressure in the housing reaches a certain point (due to accumulation of frost on the evaporator coils interfering with the flow of air through the fins) the hot gas valve is opened. When the defrosting is completed, as indicated by rise of temperature to a given point, a temperature responsive switch closes the hot gas valve and opens the refrigerant valve. Whereas Jones employs a thermal motor operating on a temperature differential both to initiate and terminate defrost, the Transicold unit initiates defrost with

a pressure actuated switch and terminates it with a temperature actuated switch.

Patent No. 3, according to plaintiff's witness Caine, is directed to the "circuitry" by which the hot gas by-pass defrost system of Patent No. 2 is effected. As shown in Patent No. 3, a time switch is set to initiate defrosting at predetermined time intervals whether or not a condition exists on the evaporator coils requiring defrosting. (The switch mechanism is referred to as a "two position" switch inasmuch as it maintains the refrigeration circuit in closed condition in the normal course of operation and moves to a second position to initiate defrosting when the timing mechanism gives its command. It is "active" in both positions in that it completes one circuit or another in each of its "two" positions.)

The defrosting cycle is terminated when the bimetallic thermostat switch blade engages contact. For example, when the temperature of the evaporator rises to a degree sufficient to cause contact between the bimetallic element and contact, the circuit is closed, the hot gas valve is turned off and the refrigerant valve is opened.

The system thus embodied in Patent No. 3 may be described briefly as a "time-initiated" and "temperature-terminated" automatic defrosting system.

The drawing and description also disclose an electrical heating element disposed in the bottom of a drip pan to perform the same function as the hot gas by-pass which contacts the drip pan in Lund patent 2,451,682.

The prior art shows a variety of automatic means for initiating and terminating defrost of refrigeration equipment, including time, temperature or pressure initiation and time, temperature or pressure termination. Claims 1 to 4, inclusive, of Patent No. 3 specify termination of the defrost cycle by thermal responsive means although no specific means is specified for initiating the defrost cycle.

Doble patent 1,913,433, issued June 13, 1933, describes the method to initiate a defrost cycle by a timing mechanism and to terminate the defrost by a thermal means and in its application filed November 16, 1931, sets forth such an arrangement and states that an electric clock actuates the defrost circuit and a thermostat terminates the defrosting operation when the temperature rises to a given point.

Haymond patent 1,912,841, issued June 6, 1933, describes the concept of initiating defrost by a timing means and automatically by-passing hot gas to the evaporator coil to effect defrosting. The hot gas thus introduced is brought into the system at a point between the expansion valve and the evaporator coils per se, just as in the alleged infringing devices.

Kitzmiller patents 2,001,027 and 2,-001,028, issued May 14, 1935, disclose a general combination similar to that employed in the alleged infringing devices.

Cocanour patent 2,452,102, issued October 26, 1948, on an application filed November 6, 1944, discloses means for initiating and terminating a defrost cycle in that it provides a suitable pressure-responsive or temperature-responsive control switch to operate a control valve and fan motors whereby a valve is opened to permit introduction of hot fluid into the evaporator coil. Simultaneously therewith the fan motors are stopped, just as contemplated in the disclosure and claims of Patent No. 3.

Hanson patent 2,286,961, issued June 16, 1942, also discloses a hot gas by-pass.

Ruppricht patent 2,049,625, issued August 4, 1936, discloses initiation of a defrost cycle "adapted to be actuated by pressure or temperature" and "deactuated by pressure or temperature," and states that there is thus available "four combinations for control of the automatic operation thereof."

Kramer patent 2,440,146, issued April 20, 1948, discloses the use of hot gas by-pass with automatic control for defrosting and also for heating the drip pan.

The general arrangement in this patent is similar to that shown in the Lund patent.

Claim 13 of Patent No. 3 is limited to an apparatus in which an electrically heated evaporator drip pan is rendered operative simultaneously with initiation of the defrost cycle. No such arrangement is found in any of the alleged infringing structures of defendants.

The two principal expert witnesses of the plaintiff were Mr. Caine, an experienced patent lawyer who evidently devotes most of his time to plaintiff's business, and Mr. Sutton, an officer of the company. For the defendant, the expert testimony is by impartial witnesses.

Mr. Swinburne, an employee of Carrier Corporation, one of the largest corporations in the nation connected with airconditioning and refrigeration, testified that hot gas defrosting was known prior to the alleged Jones invention as set forth in Claim 6 of Patent No. 2 and that Goddard patent 2,476,184 teaches the use of a pressure switch to initiate defrosting. He also gave the early history of refrigeration in the transport equipment field and explained the theory and method of operation of various refrigeration and airconditioning systems for stationary use as well as in transport refrigeration.

Mr. Kirkpatrick, general manager of American Manufacturing Company, a direct competitor of Thermo King and Transicold, testified that in spite of the similarity of Goggins patent 2,187,397, issued January 16, 1940, and the Jones patent, the Transicold unit does not employ an arrangement in which the bellows act upon the throttle linkage as contemplated by Jones and Goggins.

Defendants further contend that Claims 1 to 4, inclusive, of Patent No. 1, are not infringed because defendants do not employ a magnet and spring for moving any means (whether with or without a "snap-action") or for "holding" any means in a given position until a "substantial" change of temperature occurs, as called for in Claim 1. Defendants do not employ a "chamber connected to said thermostat" or "a bellows in said chamber" as called for by Claim 1. Defendants contend also that Claim 3 is not infringed for the reason that since there is no bellows or expansible chamber in defendants' structure, there is no means connecting said chamber and said throttle. The same contentions are made with reference to the other claims under Patent No. 1.

Defendants further contend that in view of the state of the art, Jones did nothing in Patent No. 3 which would not have been obvious to those having ordinary skill in the refrigeration art at the time Jones made his alleged invention. The test is not what an ordinary mechanic would have been able to do, but what those skilled in the art would have been able to do.

Defendants further contend that there is no difference between what Jones has claimed and what is taught in the art, but if there is a difference, that difference is such that the subject matter as a whole would have been obvious to those having ordinary skill in the art.

The Supreme Court, in an opinion delivered by Mr. Justice Jackson, in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 71 S.Ct. 127, 129, 95 L.Ed. 162, states:

"While this Court has sustained combination patents, it never has ventured to give a precise and comprehensive definition of the test to be applied in such cases. The voluminous literature which the subject has excited discloses no such test. It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. In course of time the profession came to employ the term 'combination' to imply its presence and the term 'aggregation' to signify its absence thus making antonyms in legal art of words which in ordinary speech are more nearly synonyms. However useful as

words of art to denote in short form that an assembly of units has failed or has met the examination for invention, their employment as tests to determine invention results in nothing but confusion. The concept of invention is inherently elusive when applied to combination of old elements. This, together with the imprecision of our language, have counselled courts and text writers to be cautious in affirmative definitions or rules on the subject.

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. * * *

* * * * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to

the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

And in the concurring opinion Mr. Justice Douglas sets forth the "consequences of a looser standard" as stated by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, as follows:

"It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

In Apco Manufacturing Company v. Temco Electric Motor Company, 11 F.2d 109, the Fifth Circuit Court held, quoting from the headnotes:

"Where a patent is for the combination of well-known parts, and is therefore a narrow invention, there can be no infringement thereof, unless the means used by alleged infringer are substantially the same as those of the patent."

The plaintiff contends there was a long-felt need for hot gas defrosting in the transport refrigeration art, however, the demand for temperature transport refrigeration equipment and the accompanying frosting problems were post

445

World War II and were promptly solved by those skilled in the refrigeration art. In fact, the solution of the problem existed long before the commercial need for defrosting arose.

This court does not deem it necessary to make a more detailed analysis of the various patents referred to in this suit or of the arguments of counsel with respect to the distinctions that may be drawn between the known art and the Jones patents and the methods practiced by the defendants in the operation of their units.

There is no question but Thermo King enjoys a very extensive and lucrative business in transport refrigeration. But this court cannot reach the conclusion that the Jones patents present the only method for preserving the desired temperature and defrosting operations in transport refrigeration. To reach that conclusion would grant an absolute monopoly to the plaintiff in this particular field. Certainly the Jones patents have merit and they indicate a very extensive research in the refrigeration field, but the court is also not unmindful that many of its competitors and those engaged in similar businesses have been equally active in their efforts to solve this very important problem. There is a serious question in the court's mind whether or not the Jones patents indicate real inventive genius or whether it is more a practical combination of the known art and transforming it to meet present conditions.

It is with some reluctance that the court holds the Jones Patents Nos. 1, 2 and 3 valid, since the validity of these patents is based on highly technical combinations.

However, in holding the Jones patents valid, it must be understood that said patents are specifically limited to the definite specifications of the various claims and cannot be extended to employ all means and methods to achieve the desired result from the use of the unpatented elements involved.

The court has also reached the conclusion that there is no infringement by the defendants of the Jones patents. The exhibits introduced by the plaintiff show wide differences between their construction and the units alleged to be those of the defendants as exhibited at the trial. The two principal exhibits alleged to be those of the defendants consist of the unit procured by the plaintiff in Kansas and the so-called kit, but it is admitted that the kit is commercially available and that anyone could purchase and use it.

Plaintiff is enjoined from bringing suit against or threatening to sue any of the customers or prospective customers of defendants with respect to any of the Jones patents in suit.

The parties will pay thier respective costs and attorney's fees.

Form of judgment consistent with this opinion will be submitted within 20 days. Findings of fact and conclusions of law are filed herewith.